IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARCUS L. CHAMBERS,<br><br>Plaintiff,<br><br>v.<br><br>WALMART STORES, INC., CALVIN MARTIN, JULIE BEGINES, KIMBERLY MURAWSKI,<br><br>Defendants. | ) | 1:14CV996 |

MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on a Partial Motion to Dismiss filed by Defendants Walmart Stores, Inc. ("Walmart"), Calvin Martin, Julie C. Begines, and Kimberly Murawski. [Doc. #17]. Plaintiff Marcus L. Chambers, proceeding *pro se*, has responded in opposition to the motion [Doc. #23]. For the reasons set out below, the Court recommends that Defendants' Partial Motion to Dismiss be granted in part and denied in part, as set out below.

I. FACTS, CLAIMS, AND PROCEDURAL HISTORY

Plaintiff filed his Complaint alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., against his former employer, Walmart, and three individual managers. The managers now move under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims against them because individual liability as an "employer" does not exist under Title VII. Defendants also move to dismiss Plaintiff's claim of a racially hostile work environment, arguing that Plaintiff has not pled sufficient facts to state a claim upon which relief may be granted.

Plaintiff alleges that while working at Walmart he was "sexually harassed, verbally harassed, discriminated against training and promotion, retaliation, wrongful termination, two mental illnesses while working for Walmart with lack of accommodation, back pay and pain and suffering." (Compl. [Doc. #3], at 3.)

He alleges that Assistant Store Manager Julie Begines sexually harassed him on several occasions. (Id.) Plaintiff accuses Defendant Begines of repeated unwanted sexual flirtation and advances, massaging Plaintiff's arm, using her hips to bump his hips and other bodily areas, blocking his movement at times, and touching his hand when it was in his pocket. (Id.)

Plaintiff alleges that Assistant Store Manager Kimberly Murawski "verbally harassed [him] on several occasions using racial slurs, negative stereotyping, verbal kidding, teasing, joking, intimidating acts of bullying, continuously showed hostility towards [him], disrespected [him], as well as degraded [him]." (Compl. at 3.) Plaintiff further alleges that during a staff meeting Defendant Murawski said (referring to herself), "look at me I'm all ghetto," and also once "used the word ghetto to describe the appearance of the store." (Id.) Plaintiff says that once Defendant Murawski yelled at him and warned him not to walk away from her when she was talking to him. (Id.) Defendant Murawski told Plaintiff one time that she did not trust "associate Donnie and that he looks like the type to steal," according to Plaintiff. (Id.) Plaintiff further alleges that on one occasion when they were touring the freezer, Defendant Murawski saw Plaintiff patting his head and remarked, "I'm glad I'm white and don't have to wear weave cause all the black girls I've worked with were always beating their heads and I'm glad I don't have that problem." (Id.)

Plaintiff alleges that Store Manager Calvin Martin transferred him to day shift on November 10, 2013, for training but that during the two and half months he was on day shift he "didn't receive any training instead [he] was placed in the freezer and backroom." (Compl. at 4.) Plaintiff also claims that Defendant Martin "saw to it that [he] was written up three times back to back," "admitted he replaced [Plaintiff] on third," and stated that he thought Plaintiff was quitting. (Id.) Plaintiff alleges that on April 9, 2014, he was "wrongfully terminated with no reason given by [Defendant Martin] and reinstated two days later" by one of Defendant Martin's superiors. (Id.) Finally, Plaintiff says that he was "repeatedly turned down by [Defendant Martin] for scheduling accommodation." (Id.)

## II. DISCUSSION

### 1. Standard

A plaintiff fails to state a claim on which relief may be granted under Fed. R. Civ. P. 12(b)(6) when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### 2. Individual Defendants

The individual Defendants, Martin, Begines, and Murawski, move to dismiss all claims against them because there is no individual liability under Title VII. Title VII prohibits discrimination by an "employer." 42 U.S.C. § 2000e-2. The definition of "employer" does not

include supervisory employees. See 42 U.S.C. § 2000e(b); Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 181 (4th Cir. 1998) ("We . . . reiterate that supervisors are not liable in their individual capacities for Title VII violations."); Cobb v. Dep't of Veterans Affairs, 1:04CV872, 2006 WL 156876 (M.D.N.C. Jan. 20, 2006) (dismissing for failure to state a claim the plaintiff's Title VII claims against individual employees).

The Court notes that Plaintiff has alleged in his Complaint a "lack of accommodation" for two mental illnesses. (Compl. at 3.) To the extent that this claim is construed as a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, et seq., the ADA defines "employer" in the same manner as Title VII; therefore, the individual defendants are not proper defendants under the ADA. See Baird ex rel. Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999) (noting that the reasoning of Lissau is applicable to the ADA as to who qualifies as an employer.).

Plaintiff argues in his Response that the individual defendants should be liable under the definition of employer set out in the Fair Labor Standards Act (FLSA). (Response [Doc. #23], at 4.) However, Plaintiff has not alleged a violation of the Fair Labor Standards Act, and the provisions of the FLSA would not create individual liability under Title VII or the ADA. Therefore, the individual defendants should be dismissed.

3. Racially Hostile Work Environment

Defendants also move to dismiss Plaintiff's claim of racially hostile work environment because Plaintiff's allegations fall short of the Twombly/Iqbal plausibility standard. The essential elements of a claim of racially hostile work environment are: (1) the plaintiff

experienced unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. See Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015); Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Defendants argue that Plaintiff's allegations fail to establish the third element, that the harassment was sufficiently severe.

The Fourth Circuit has recently provided additional guidance with respect to this issue:

> Element three of a hostile work environment claim requires a showing that "the environment would reasonably be perceived, and is perceived, as hostile or abusive"; the plaintiff may, but is not required to, establish that the environment is "psychologically injurious." See Harris, 510 U.S. at 22, 114 S.Ct. 367. Whether the environment is objectively hostile or abusive is "judged from the perspective of a reasonable person in the plaintiff's position." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). That determination is made "by looking at all the circumstances," which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23, 114 S.Ct. 367. It "is not, and by its nature cannot be, a mathematically precise test." Id. at 22, 114 S.Ct. 367.
>
> To be sure, viable hostile work environment claims often involve repeated conduct. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115–17, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). That is because, "in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id. at 115, 122 S.Ct. 2061. For example, " 'mere utterance of an ... epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." Harris, 510 U.S. at 21, 114 S.Ct. 367 (alteration in original) (quoting Meritor, 477 U.S. at 67, 106 S.Ct. 2399). The same goes for "simple teasing [and] offhand comments." See Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Importantly, however, an "isolated incident[ ]" of harassment can "amount to discriminatory changes in the terms and conditions of employment," if that incident is "extremely serious." Id. (internal quotation marks omitted).

> In measuring the severity of harassing conduct, the status of the harasser may be a significant factor—e.g., "a supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals." Rodgers v. W.–S. Life Ins. Co., 12 F.3d 668, 675 (7th Cir.1993). Simply put, "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 763, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

Boyer-Liberto, 786 F.3d at 277-78.

In the present case, Plaintiff complains that Assistant Store Manager Kimberly Murawski "verbally harassed [him] on several occasions using racial slurs, negative stereotyping, verbal kidding, teasing, joking, intimidating acts of bullying, continuously showed hostility towards [him], disrespected [him], as well as degraded [him]." (Compl. at 3.) Plaintiff describes some of those incidents in the Complaint, as set out above. In addition, in his Response to Defendant's Motion to Dismiss, Plaintiff also submitted a verified "Statement of Declaration" further describing the alleged racial slurs. Specifically, Plaintiff alleges that Manager Murawski's verbal harassment included "racial slurs," including "the use of the word 'Blackie' used to discribe [sic] African American people" (Resp. [Doc. #23], at 3.) Plaintiff further contends that Manager Murawski admitted to using the word "ghetto" as alleged by Plaintiff, and Plaintiff states that "I had witnesses to all instances but the 'Blackie' situations." (Id. at 4.)

In Reply, Defendant correctly notes that pleadings may not be amended in briefing. However, Plaintiff here submitted the Statement of Declaration, verified under penalty of perjury, adding the specific contentions to further explain his general allegations of "racial slurs" used by Manager Murawski. It would be an inefficient use of the Court's and the parties'

resources to proceed without considering that additional information, given that Plaintiff could move to amend to add that information to the Complaint in any event.[1]

Therefore, the Court will accept the contentions in the Statement of Declaration as an amendment to the Complaint to the extent Plaintiff sets out more specifically the racial slurs alleged in the Complaint. As such, Plaintiff's allegations reflect that Assistant Store Manager Murawski used the word "ghetto" as a descriptor on multiple occasions in Plaintiff's presence and used the word "Blackie" to describe African Americans on multiple occasions in Plaintiff's presence. Manager Murawski's alleged use of the word "Blackie," in particular, occurred when Plaintiff was alone with Manager Murawski, based on Plaintiff's contention that there were no other witnesses to these interactions. Taking these contentions as true, the Court cannot say that Plaintiff could not plausibly state a claim based on a racially hostile work environment. Cf. Boyer-Liberto, 786 F.3d at 280 ("As we and several of our sister courts of appeals have recognized, perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet . . . by a supervisor in the presence of his subordinates." (internal quotations omitted)).

Moreover, to the extent there are issues regarding the nature and frequency of the alleged harassment and the particular statements alleged, those matters are best addressed on an evidentiary record at summary judgment.[2] Accordingly, Defendants' Motion to Dismiss

---

[1] Indeed, the submission, which was mailed within the extended time period allowed by the Court to respond to the Motion to Dismiss, could arguably be construed as an Amendment as of right under Federal Rule of Civil Procedure 15(a)(1)(B). The Court need not resolve that issue, since the limited amendment noted above would be allowed under Rule 15(a)(2).

[2] In this regard, the Court notes that Defendants have filed only a Partial Motion to Dismiss, and Plaintiff's remaining claims are proceeding to discovery in any event. In the circumstances, it appears that this

Plaintiff's claims of racially hostile work environment should be denied, without prejudice to further consideration of these issues on the record on dispositive motions after a period for discovery.

## III. CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendants' Partial Motion to Dismiss [Doc. #17] be granted in part to the extent that all claims against Defendants Calvin Martin, Julie Begines, and Kimberly Murawski be dismissed, and that the Motion to Dismiss be otherwise denied, without prejudice to further consideration of these issues on dispositive motions after a period of discovery.

This, the 22nd day of July, 2015.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

issue is best addressed at summary judgment, rather than requiring further amendment of the pleadings and litigation at the pleadings stage.